**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD P. GLUNK F.A.C.S.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **R. BARRETT NOONE, M.D., SCOTT** | : | |
| **M. GOLDMAN, M.D., MARIE** | : | |
| **VANBUSKIRK, MAIN LINE HEALTH,** | : | |
| **JOYCE MCKEEVER, OLLICE BATES,** | : | |
| **JR., KERRY MALONEY, ANDREW** | : | |
| **DEMAREST,  DAVID GRUBB, BASIL** | : | |
| **MERENDA, MARK VESSELLA,** | : | |
| **PETER MARKS, STEVEN DADE,** | : | |
| **SABINA HOWELL and TAMMY** | : | |
| **DOUGHERTY** | : | **NO. 15-5565** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                                                   **May 16, 2016**

Richard P. Glunk, acting *pro se*, brings this § 1983 action alleging all defendants deprived him of his substantive and procedural due process rights in connection with the suspension of his medical license which resulted in the loss of his hospital staff privileges.  He also asserts state law claims for breach of contract and tortious interference with business relations against defendants R. Barrett Noone, M.D., Scott M. Goldman, M.D., Marie VanBuskirk and Main Line Health, Inc. ("MLH") (collectively, the "MLH defendants").

We shall dismiss the § 1983 claims against the MLH defendants because they are not state actors, and shall decline to exercise supplemental jurisdiction over the state law claims against them.  Because Glunk's claims against the remaining defendants are substantially similar to claims he has asserted against them in a prior

action currently pending in the United States District Court for the Middle District of Pennsylvania,[1] we shall transfer this action to that district under the first-filed rule.

## Factual and Procedural Background[2]

Glunk is a medical doctor who specializes in plastic and reconstructive surgery.[3] In 2001, one of his patients died due to a complication during a procedure at MLH.[4] The patient's family sued Glunk and MLH.[5]

The Pennsylvania State Board of Medicine conducted a professional negligence investigation of Glunk in connection with the death.[6] After a hearing, it voted to dismiss the charges on January 27, 2009.[7] Defendant Ollice Bates, Jr., M.D., the Board chairman, cast the lone dissenting vote.[8]

According to Glunk, Bates met privately with the Board prosecutor, defendant Kerry Maloney, during the course of the January 27, 2009 Board meeting.[9] Glunk alleges that subsequent to the dismissal of the charges, Bates and Maloney filed a

---

[1] *See Glunk v. Pa. State Bd. of Med.*, Civ. A. No. 14-659 (M.D. Pa. filed Apr. 7, 2014). Glunk also filed an action in this district in 2011 in which he asserted similar claims against the MLH defendants. *See Glunk v. Main Line Hosps., Inc.*, Civ. A. No. 11-405 (E.D. Pa. filed Jan. 21, 2011). Glunk voluntarily dismissed the action less than one month after filing it.

[2] The facts are recited from the amended complaint. For purposes of considering the motions to dismiss, we accept the facts alleged as true and draw all reasonable inferences from them in Glunk's favor.

[3] Amended Complaint, Doc. No. 13 ("Am. Compl."), ¶¶ 21-22.

[4] *Id.* ¶ 31.

[5] *Id.* ¶ 32.

[6] *Id.* ¶ 41.

[7] *Id.* ¶ 46.

[8] *Id.*

[9] *Id.* ¶ 51.

second charge against him.[10]  He does not allege what instigated the second charge.  It appears the new charge was Glunk's meeting *ex parte* with a Board member to influence the member in the original disciplinary proceedings by making contributions to a political campaign supported by the member and to the member's synagogue.[11]

Prior to the hearing on the second charge, Slade McLaughlin, the attorney for the deceased patient's family, sent a letter to Bates and defendant Mark Vessella, the Deputy Commissioner of Professional and Occupational Affairs.[12]  The letter transmitted peer review documents that McLaughlin had obtained from the MLH defendants.[13]

At the time he performed the procedure resulting in the death of his patient, Glunk had medical staff privileges at MLH.[14]  He contends the MLH defendants, including Noone, who was his competitor, had released the peer review documents to McLaughlin in an effort to have his license suspended so MLH could revoke his staff privileges.[15]

Department of State ("DOS") prosecutors David Grubb and Andrew Demarest alerted Glunk's attorney that the McLaughlin letter had been "intercepted" before it could be read by Bates or Vessella.[16]  Nevertheless, because they did not specifically mention

---

[10] *Id.* ¶ 52.

[11] *See Glunk v. State Bd. of Med.*, No. 2730 C.D. 2010, 2011 WL 10893889, at *1 (Pa. Commw. June 15, 2011).

[12] Am. Compl. ¶ 98 & Ex. A.  McLaughlin is not a party to this action.

[13] *Id.* at 19, 22-24, ¶¶ 99-104, 114, 125, 136.

[14] *Id.* at 20, ¶ 99.

[15] *See id.* ¶¶ 107, 109-10, 118, 120-21, 129, 131-32, 140, 142-43.

[16] *Id.* ¶ 154 & Ex. C.

the peer review documents enclosed with the McLaughlin letter,[17] Glunk alleges that defendant Joyce McKeever, the hearing examiner for the Board of Medicine who presided over the proceedings, conspired with the other defendants to conceal the McLaughlin letter and the enclosed peer review documents.[18]  In addition, according to Glunk, McKeever relied on McLaughlin's research and material drafted by other DOS personnel who had seen the McLaughlin letter with the enclosed peer review documents.[19]  Glunk also alleges that McKeever did not allow his witness to testify to discredit the testimony of the Board member he had allegedly attempted to influence, and she ignored cross-examination of the Board member.[20]

On December 2, 2010, McKeever issued a decision suspending Glunk's medical license for sixty days.[21]  Glunk's appeals to the full Board of Medicine and the Commonwealth Court of Pennsylvania were unsuccessful.[22]  Both the Pennsylvania Supreme Court and the United States Supreme Court denied his petitions for allowance of discretionary appeals.[23]  As a result of the decision suspending Glunk's license, MLH immediately revoked his staff privileges and cancelled surgeries that had been previously scheduled.[24]

---

[17] *Id.* ¶ 155.

[18] *Id.* ¶¶ 147-49.

[19] *Id.* ¶¶ 150-51, 167-68, 175, 177.

[20] *Id.* ¶¶ 169-70.

[21] *Id.* ¶ 172.

[22] *Id.* ¶¶ 178, 189-91.

[23] *Id.* ¶ 192; *see also Glunk v. Com. of Pa. Bureau of Prof'l & Occ. Affairs*, 133 S. Ct. 571 (2012) (mem.).

[24] Am. Compl. ¶¶ 180-83.

Glunk contends he was unaware of McLaughlin's disclosure of peer review documents until he obtained two documents on October 18, 2014 in response to a Right to Know Law request.[25]  Yet, an exhibit attached to his amended complaint reveals that his attorney became aware of the letter when the prosecuting attorney advised his attorney of the letter during the proceedings in 2009 and 2010.  He filed this action on October 9, 2015.

The MLH defendants have moved to dismiss the amended complaint, arguing that they cannot be liable under § 1983 because they are private individuals, not state actors, and the claims are barred by the statute of limitations and the *Rooker-Feldman* doctrine.  They also contend Glunk has not adequately pleaded his claims for breach of contract and tortious interference.

The DOS defendants have also moved to dismiss the amended complaint.  They contend the doctrine of claim preclusion and the existence of a prior pending action warrant dismissal.   They also argue Glunk has not adequately stated a claim. Demarest, Grubb and Maloney contend they are entitled to prosecutorial immunity. McKeever invokes judicial immunity.[26]

## Standard of Review

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff.  *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014).  The complaint must contain a "short and plain

---

[25] *Id.* ¶ 156, 195-97.

[26] On April 11, 2016, Glunk filed a motion for leave to file a second amended complaint as to the DOS defendants only.  However, he failed to attach his proposed second amended complaint and did not specify how an amendment would cure the defects the DOS defendants contend preclude him from relief.

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Although this standard "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).   The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss.   *Id.* (citing *Twombly*, 550 U.S. at 557).   Additionally, a *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)). With these standards in mind, we shall accept as true the facts as they appear in Glunk's amended complaint and draw all possible inferences from these facts in his favor.

### Claims Against the MLH Defendants

*Section 1983 Claims*

To state a § 1983 claim, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a person acting under the color of state law.  *Kach v.*

*Hose*, 589 F.3d 626, 646 (3d Cir. 2009).  Only a person acting under color of state law may be liable for a constitutional deprivation under § 1983.  However, under certain circumstances, a private person may be deemed a state actor subject to § 1983 liability.

Whether a private actor qualifies as a state actor hinges on "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Id.* (citations and quotations omitted).   The requisite connection exists where either: (1) the private entity was exercising powers traditionally within the exclusive prerogative of the state; (2) the private party acted with the aid of or in concert with state officials; or (3) there is a "sufficiently close nexus between the state and the *challenged* action of the [actor] so that the action may be fairly treated as that of the State itself."  *Id.* at 646, 648 (citations and quotations omitted) (emphasis in original).

The necessary "close nexus" exists where the state exercises coercive power or provides "such significant encouragement, either overt or covert," deeming the conduct state action.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)).   "[M]ere approval or acquiescence of the State" does not transform action taken by private actors into state action.  *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 154-65 (1978); *Jackson*, 419 U.S. at 357).   The state actor must "compel, influence or encourage" the private actor's conduct.  *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 802 (3d Cir. 2001).   In the end, the "state must significantly contribute to the constitutional deprivation" to make the private actor's conduct state

action.   *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1266 (3d Cir. 1994).

The focus is not on whether the state exercises control over the private actor.   It is whether the state has exercised control over the particular conduct to the extent that it resulted in the constitutional deprivation.   *Kach*, 589 F.3d at 649.   The state must play an affirmative role in the conduct so that the action can be "fairly attributable to the State."   *Am. Mfrs.*, 526 U.S. at 50.

When alleging state action by a private actor by virtue of joint activity, a plaintiff must demonstrate that the defendant acted together with or obtained significant aid from state officials.   *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 278 (3d Cir. 1999) (citing *Jordan*, 20 F.3d at 1267).   The plaintiff must show that the state and the private actor shared "common purpose or intent."   *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195 (3d Cir. 2005) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 (1982)). There must be a meeting of the minds.   *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008).

Glunk's allegations, accepted as true and liberally construed, do not support the conclusion that the MLH defendants were state actors.   At most, he alleges that the MLH defendants, through McLaughlin, who was not a state official, attempted to influence the disciplinary proceedings before the Board of Medicine by releasing peer review documents.   When the MLH defendants released the documents, they did not act on behalf of the state or at the state's request.   They acted at the instigation of a private individual—McLaughlin.   They were motivated by their own goal of excluding Glunk from staff privileges.   The DOS defendants, on the other hand, were motivated by

their independent goal of exacting retribution against him.  By providing documents to a third party who transmits them to the state, one does not become a state actor.  *See, e.g.*, *Boyer v. Mohring*, 994 F. Supp. 2d 649, 659 (E.D. Pa. 2014) (quoting *Cooper v. Muldoon*, No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006)) (citing *Caswell v. BJ's Wholesale Co.*, 5 F. Supp. 2d 312, 318-19 (E.D. Pa. 1998)) (communications to state actor, "without facts supporting a concerted effort or plan between the parties," not sufficient for state action by private party).  In short, there are no facts supporting Glunk's contention that the MLH defendants were state actors by virtue of joint activity.

There is no allegation to support an inference that the MLH defendants were exercising powers of the state.  Nor can it be inferred that the state exercised coercive power or provided encouragement.  Rather, the idea of leaking documents to the Board of Medicine in order to influence the disciplinary proceedings originated with either McLaughlin, who represented the family of Glunk's deceased patient, or the MLH defendants, who Glunk alleges sought to revoke his staff privileges, or both.  There was simply no contact between the state and the MLH defendants.

We cannot find, on the basis of the allegations in the amended complaint, that the MLH defendants were state actors.  Thus, Glunk cannot state a § 1983 claim against them.

### *State Law Claims*

A district court may decline to exercise supplemental jurisdiction over a state law claim if all claims over which it has original jurisdiction are dismissed.  28 U.S.C. § 1367(c)(3).  In exercising discretion to retain or decline supplemental jurisdiction, we

must consider "judicial economy, convenience and fairness to the litigants." *Kach*, 589 F.3d at 650 (quoting *New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996)).

None of these considerations favor retaining jurisdiction, especially in light of our transferring this action to the Middle District of Pennsylvania.[27]   The MLH defendants are not parties to the action pending in that district.   The claims in both actions against the DOS defendants are substantially similar.   Consolidating the two actions will result in economies in discovery and trial.   The DOS defendants in both actions are represented by the same attorneys.   Therefore, we decline to exercise supplemental jurisdiction over Glunk's state law claims for breach of contract and tortious interference with business relations.[28]

## Claims Against the DOS Defendants

Under the first-filed rule, a court may require that cases sharing substantially similar subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed.   *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988).   The rationale for the rule is sound judicial administration and comity among federal courts of equal stature.   *Id.*   It is also designed to relieve parties from vexation of multiple litigations involving the same subject matter.   *QVC, Inc. v. Patiomats.com, LLC*, No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012).

---

[27] *See* discussion *infra* at 11-13.

[28] Although the MLH defendants seek dismissal of these claims on substantive grounds, we dismiss them by declining to exercise supplemental jurisdiction.   *See, e.g.*, *Segers v. Williams*, No. 13-2413, 2014 WL 285078, at *5 n.9 (E.D. Pa. Jan. 27, 2014).   If he chooses, Glunk may refile these claims in state court.   *See Kach*, 589 F.3d at 650 (citing *Elmore v. Cleary*, 399 F.3d 279, 283 (3d Cir. 2005)) (dismissal of state law claims under § 1367(c)(3) is without prejudice).

The rule is not inflexible.  *EEOC*, 850 F.2d at 976.  Exceptions, though rare, do exist.  In exercising its discretion, a court may decline to invoke the rule where: (1) rare or extraordinary circumstances exist; (2) the first filer engaged in inequitable conduct; (3) he acted in bad faith; (4) he engaged in forum shopping; (5) the later-filed action has progressed more than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum.  *Id.* at 972, 976.

None of these exceptions are present here.  Having filed both actions, Glunk can hardly contend that the first filer acted in bad faith, engaged in forum shopping or in inequitable conduct.  Likewise, he cannot argue that the earlier action was filed in anticipation of the later one.  This action has not progressed more than the Middle District action.  Glunk does not assert, nor can we discern, any rare or extraordinary circumstances.  In sum, there is no reason not to apply the first-filed rule.

That the cases do not share identical claims or all the same parties does not preclude application of the first-filed rule.  The rule applies where the core facts are similar and the causes of action in both arise out of the same conduct.  *Synthes, Inc. v. Knapp*, 978 F. Supp. 2d 450, 456 (E.D. Pa. 2013).  The cases need not be identical for the first-filed rule to apply.  Rather, the rule extends to cases where there is a substantial overlap of the subject matter.  *Id.* at 457 (citing *Villari Brandes & Kline, P.C. v. Plainfield Specialty*, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009)).  Thus, the critical substantive inquiry in the first-filed rule analysis is subject matter.  *Id.* (citing *Villari*, 2009 WL 1845236, at *6).

Here, the two actions are substantially similar.  The Middle District action, like this one, is based on the premise that the DOS defendants violated Glunk's due process rights by improperly considering *ex parte* communications and ignoring evidence introduced by Glunk in the course of the second disciplinary proceeding against him.[29]  As he does in this action, Glunk alleges that Bates and Maloney instigated a second investigation for political retribution.[30]  He also alleges that McKeever, in her hearing examiner role, improperly considered McLaughlin's *ex parte* letter, whose existence she and other DOS defendants conspired to conceal.[31]  In both actions, he alleges that McKeever did not allow impeachment testimony of the Board member Glunk had allegedly attempted to influence and ignored that Board member's testimony.[32]

The claims in each action are intertwined.  The disposition of claims in one action could have preclusive effect on similar claims in the other.

There are some defendants named in the Middle District action that are not named here.  They are the Pennsylvania State Board of Medicine, the Pennsylvania Department of State, Sara Petrosky, Mark Greenwald and Thomas A. Blackburn. Those defendants are represented by the same attorneys representing the DOS defendants in this action.  Their conduct is related to the conduct of the other DOS defendants.

---

[29] *See generally* Second Amended Complaint, Doc. No. 66, Civ. A. No. 14-659 (M.D. Pa.).

[30] *Id.* ¶¶ 62-67.

[31] *Id.* ¶¶ 119-31, 167.

[32] *Id.* ¶¶ 165-66.

The substantial overlap in subject matter between the two actions and considerations of efficient judicial administration call for application of the first-filed rule. Therefore, we shall transfer this action to the Middle District.

**Conclusion**

Because the MLH defendants were not state actors, we shall dismiss the § 1983 claims against them and decline to exercise supplemental jurisdiction over the state claims.  Because the claims against the remaining defendants are substantially similar to the claims asserted in the earlier action currently pending in the Middle District of Pennsylvania, we shall transfer this action to that district.